STATE of Maine

v.

Kim R. SNOW.

Supreme Judicial Court of Maine.

Argued Nov. 10, 1981.

Decided Dec. 24, 1981.

Michael E. Povich, Dist. Atty. (orally), Ellsworth, for plaintiff.

Foster Law Offices, Mark Beede (orally), Philip R. Foster, Ellsworth, for defendant.

Before McKUSICK, C. J., and NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

McKUSICK, Chief Justice.

In this "child abuse" case tried to a jury in Superior Court (Hancock County), defendant was convicted of simple assault, 17–A M.R.S.A. § 207 (Supp.1981), and sentenced to the Maine Correctional Center for 364 days. On appeal, defendant asserts error in the admission of his extrajudicial statement before proof of *corpus delicti*, challenges the sufficiency of the evidence to support a conviction, and attacks part of the presiding justice's charge to the jury. Finding merit in the last claim of error, we vacate the judgment of conviction and remand for a new trial.

On the morning of July 7, 1980, defendant's wife went off to work, leaving in defendant's exclusive care their healthy, three-month-old daughter Heidi. Sometime that afternoon the baby suffered a severe head injury, and defendant called an ambulance to take her to the hospital. The injury caused the baby serious brain damage that, in the opinion of one of the doctors who treated her, may later result in learning problems and seizures.

Defendant was indicted and tried before a jury on a charge of aggravated assault, 17–A M.R.S.A. § 208 (Supp.1981). The State's first witness, defendant's mother-in-law, testified that she visited the Snows' home after the incident and found that the mattress and spring of the baby's crib had collapsed at one end, but were not touching the floor; blankets and pillows were still in the crib. Defendant's wife testified that on the morning of July 7 Heidi had been a healthy, normal baby of ten pounds weight, but by late afternoon, in the hospital, the infant had become very pale and apparently unconscious. The baby's injury was so serious that she had to remain in the hospital for almost a month. Defendant's wife also confirmed that the baby normally slept in the crib, which had not collapsed prior to July 7. The crib itself was entered as an exhibit through the wife's identification. A police officer then described the condition of the broken crib following the incident and authenticated photographs of the crib that went into evidence. His measurements showed the mattress had fallen only about fifteen inches at the end near the headboard.

Over defendant's objection, and after the presiding justice had expressly ruled that the State had established *corpus delicti*, the police officer next related the explanation of the baby's injury that defendant had given the police: that while he had been lying in bed listening to the radio, defendant had heard a crash and looked up to find that the spring and mattress of the baby's crib had given way at one end, causing her to slide down the mattress and hit her head against the headboard. Two doctors who had treated the baby testified later for the State that her injury was too great to be accounted for by the accident defendant described.

In his defense defendant took the stand to offer another explanation. He insisted that the baby had fallen out of the crib when the mattress collapsed, even though one of the doctors had earlier testified that the opening between the headboard and the mattress had not been wide enough for Heidi to have slipped through. Defendant's testimony was also in conflict with that of the other doctor, who had said that if the

baby had been injured in a fall, she had to have fallen from a height of at least three feet. Prior to its collapse, the top surface of the mattress had not been more than two and one-half feet from the floor.

## I. *Corpus Delicti* and Sufficiency of the Evidence

 The *corpus delicti* rule requires that admission of an inculpatory statement [1] made by the defendant be preceded [2] by proof that the crime charged was committed by someone. *See State v. Grant,* Me., 284 A.2d 674, 675–76 (1971). In meeting that *corpus delicti* burden, the State was not obliged to prove the commission of a crime beyond a reasonable doubt, but merely to "present sufficient credible evidence to support a substantial belief that the crime charged has been committed by someone." *State v. Bleyl,* Me., 435 A.2d 1349, 1367 (1981); *State v. Anderson,* Me., 409 A.2d 1290, 1300–01 (1979). The exact quantum of proof required is difficult to specify, but is less than a "fair preponderance of the evidence." *State v. Atkinson,* Me., 325 A.2d 44, 45 n. 1 (1974). The Maine standard is in line with that employed in many other jurisdictions that have squarely faced the issue. *See State v. Pineda,* 110 Ariz. 342, 343, 519 P.2d 41, 42 (1974) (evidence must establish a "reasonable inference" of *corpus delicti*); *People v. Cantrell,* 8 Cal.3d 672, 679, 105 Cal.Rptr. 792, 796, 504 P.2d 1256, 1260 (1973) ("reasonable probability" established by "slight evidence"); *State v. Wilbur,* 115 R.I. 7, 13, 339 A.2d 730, 734 (1975) ("some corroborative evidence").

 We are not convinced that the presiding justice committed any reversible error in admitting defendant's extrajudicial statement. The justice's decision that the State had by then established *corpus delicti*

was a preliminary determination of fact within the meaning of M.R.Evid. 104(a). Field & Murray, *Maine Evidence* § 801.7 (Supp.1980). On appeal the Law Court reviews such factual determinations preliminary to the admission of evidence by the "clearly erroneous" standard. *See, e.g., State v. Viger,* Me., 392 A.2d 1080, 1083 (1978) (expert's credentials); *State v. Carter,* Me., 391 A.2d 344, 346 (1978) (probable cause for warrantless search); *State v. Parkinson,* Me., 389 A.2d 1, 9 (1978) (probable cause for warrantless arrest). Use of the "clearly erroneous" test to review the trial judge's preliminary finding of fact recognizes the superior opportunity that he enjoyed to hear the evidence as it was presented through live witnesses and is consistent with the same policy by which deference is accorded to a trial court's factfindings in civil cases. *Cf.* M.R.Civ.P. 52(a); *Flagg v. Davis,* 147 Me. 71, 75, 83 A.2d 319, 321 (1951). *See also Dunton v. Eastern Fine Paper Co.,* Me., 423 A.2d 512, 514–17 (1980). In *Harmon v. Emerson,* Me., 425 A.2d 978, 982 (1981), we recently stated the high hurdle that an appellant must clear to obtain a reversal of a finding by the trial judge:

> An appellate court can reverse a finding of fact only where (1) there is no competent evidence in the record to support it, or (2) it is based upon a clear misapprehension by the trial court of the meaning of the evidence, or (3) the force and effect of the evidence, taken as a total entity, rationally persuades to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case.

1. The *parties* are in sharp disagreement over whether the *corpus delicti* rule applies to defendant's extrajudicial statement, which he meant to be exculpatory. In any event, however, the inculpatory-exculpatory debate is rendered moot by our conclusion that on appeal we find no reversible error in the presiding justice's finding of *corpus delicti.*

2. The presiding justice in the case at bar ruled before admitting defendant's extrajudicial

statement that the *corpus delicti* had been established. Since on appeal we uphold that ruling, we do not decide, and intimate no opinion on the question, whether the order-of-proof aspect of the *corpus delicti* rule survives the adoption of M.R.Evid. 611(a), which authorizes the trial court to "exercise reasonable general control over the mode and order" of proof. *See* Field & Murray, *Maine Evidence* § 611.1, at 154 (1976).

On this record we cannot say that the presiding justice was clearly erroneous in his *corpus delicti* finding.

■ Before making his *corpus delicti* finding, the presiding justice heard testimony that an infant of tender age had suffered a very serious head injury and that the crib in which she customarily slept had collapsed at a time when defendant had had the exclusive care and custody of her. From the testimony and exhibits, including the crib itself, that were already part of the record, the presiding justice could have concluded that the bedding in the baby's crib had been thick enough to prevent her from being badly hurt by an accidental collapse, and that the gap that opened between the mattress and headboard had not been large enough to permit the baby to fall from the crib. We cannot say that the presiding justice clearly erred in forming his substantial belief that the infant's injury was occasioned by crime rather than by accident.

Admittedly, this case is unlike *State v. Silva*, 153 Me. 89, 134 A.2d 628 (1957), in which the Law Court held that a jury could infer the defendant's guilt from her exclusive custody of an abused child, because in that case the child had suffered a succession of mysterious injuries. However, we do not here deal with the ultimate issue of guilt, but merely with the threshold question of whether the evidence in the record prior to the time the State offered defendant's out-of-court statement justified a sufficient belief that a crime had occurred to permit admission of defendant's statement.

■ On appeal defendant also takes nothing by his claim that the total evidence was insufficient to convict. Once his extrajudicial statement was properly received in evidence, along with his own in-court testimony, both with grave inconsistencies with the physical and medical evidence, the jury could rationally conclude beyond a reasonable doubt that defendant had committed the crime of simple assault upon his baby daughter of tender age. *See State v. Kelley*, Me., 308 A.2d 877, 886 (1973).

## II. Jury Instructions

■ In charging the jury, the presiding justice explained that a "special rule" permits jurors to infer from a defendant's exclusive custody of a young child during the time the child suffered criminal abuse that the defendant is guilty of the abuse. In response to defendant's objection out of the jury's hearing, the justice said he grounded his instruction on two cases in which the Law Court approved the inference he described, *State v. Silva, supra* at 100, 134 A.2d at 633–34, and *State v. Burnham*, Me., 427 A.2d 969, 973 (1981). This reliance was misplaced, and the instruction was error.

In both *Silva* and *Burnham*, this court, in reviewing the probative effect of the trial evidence, merely recognized a permissible inference the jury could have drawn from the fact of exclusive custody; in neither did it approve a jury instruction. By singling out this one inference from the many the jury could rationally have drawn, the presiding justice gave it undue weight, elevated it almost to the level of a statutory presumption, and veered close to proscribed comment on the evidence. He compounded the problem by labelling the inference a "special rule." The instruction may well have misled the jury into expecting defendant to come forward with an explanation for the child's injury. We cannot say that such an impermissible shifting of burdens was harmless error, especially since the jury's verdict of guilt of simple assault reflects an apparent compromise. The crime in this case, if there were one, must have been aggravated assault;[3] that the jurors found defendant guilty of a lesser included offense suggests that they split the difference between aggravated assault and acquittal. While we cannot know what transpired in the jury deliberations, it is possible that the presiding justice's instructions may have prevented the jury from acquitting

---

**3.** Assault that results in serious bodily injury is aggravated assault. 17–A M.R.S.A. § 208(1)(A) (Supp.1981). Heidi Snow's injury, which re- sulted in almost a month of hospitalization and could leave her with permanent brain damage, necessarily constituted serious bodily injury.

defendant. By no means do we believe "it highly probable that the error did not affect the judgment." See *State v. True*, Me., 438 A.2d 460, 467 (1981). *Quoting* R. Traynor, *The Riddle of Harmless Error* 35, 49–51 (1970). Defendant is entitled to a new trial. That second trial will be on a charge of only simple assault since his conviction at his first trial for only that lesser offense acts as an acquittal of the original charge of aggravated assault. *State v. Chaplin*, Me., 286 A.2d 325, 334 (1972).

The entry must be:

Judgment of conviction vacated; case remanded for further proceedings consistent with the opinion herein.

All concurring.