Majority: SAUFLEY, C.J., and ALEXANDER, SILVER, and JABAR, JJ.
Dissent: MEAD and GORMAN, JJ.
SILVER, J.
[¶ 1] David C. Ireland Jr. appeals from an Order of Protection from Abuse entered in the District Court (Presque Isle, O’Mara, J.) based upon a finding that Ireland sexually abused the parties’ five-year-old daughter. Ireland argues that the court committed an abuse of discretion by admitting evidence of statements that the victim made to a social worker during play therapy identifying Ireland as her abuser. Ireland also contends that the court’s finding of abuse was clearly erroneous. We affirm.
I. BACKGROUND
[¶ 2] David Ireland and Mary Walton had an intimate relationship in 2006. After the relationship ended, Walton learned that she was pregnant. The parties’ daughter was born in December 2006. About a year later, the court issued an order allocating parental rights and responsibilities. The order was modified several times. As of October 2012, pursuant to the order, the child lived primarily with Walton and stayed with Ireland every other weekend and for certain extended periods during school vacations. The parties were generally cooperative with one another and had no problems adhering to the visitation schedule. According to Walton, the child began to exhibit reluctance to visit Ireland and would cry hysterically before leaving for visits with him. Nevertheless, Walton encouraged the child to go on the visits.
[¶ 3] One evening in October 2012, after the child had returned from a visit with Ireland, Walton gave her a bath. While Walton was bathing the child, the child said that it “hurt down there” and pointed to the area of her crotch. Walton asked her why, and the child gave an explanation. Walton brought the child to the emergency room at The Aroostook Medical *885 Center, where doctors examined the child and advised Walton to schedule a forensic child-abuse evaluation at the Spurwink Clinic. The following day, Walton filed an action seeking a protection from abuse order against Ireland on the child’s behalf and contacted Spurwink to schedule an evaluation.
[¶4] Over the next several days, the child became upset and expressed fear that Walton no longer loved her. Walton took the child to meet with Cindy Barker, a clinical therapist, to address this behavior. Barker, a licensed clinical social worker, explained her role to the child in what she considered to be an age-appropriate way, then initiated conversation with the child by asking open-ended questions about her family. The child stated that she did not like going to see her father and that she did not want to see him anymore. During the session, the child repeatedly stated, “he picks at [my] butt and crotch with his fingers and puts his fingers in me,” and said that he would then lick his fingers. The child told Barker that she was surprised and confused when her father did this, that it was “really gross,” and that she didn’t understand why he would do that.
[¶ 5] Barker has continued to meet with the child for an hour every other week. Barker described her treatment plan for the child as being to help the child to feel comfortable expressing herself, to work on anxieties and insecurities that have occurred, and to help the child develop coping skills. Barker explained that the content of the child’s statements — including the identity of the person she described as abusing her — was important to the treatment plan because it helped Barker to understand the basis for the child’s fears and insecurities.
[f 6] Walton took the child to Spurwink for the sex-abuse evaluation in December 2012. The child met with Donna Andrews, a licensed clinical social worker employed as a forensic interviewer. Andrews’s primary purpose in evaluating the child was to determine whether there was evidence that abuse occurred. Andrews asked the child if she knew why she was there; the child responded that she didn’t know. During the interview, Andrews asked the child if anyone had done something to her crotch and told her not to tell about it, to which the child responded, ‘Tes, Dad, but I told anyway.” The child gave further descriptions of the abuse consistent with what she had told Barker.
[¶ 7] A physical examination revealed no evidence of trauma or abuse. Andrews recommended that the child remain in therapy with Barker, that law enforcement and DHHS investigate, and that the child have no contact with her father while the investigation continued. The child did not meet with Andrews again.
[¶ 8] At the hearing on Walton’s complaint for protection from abuse, both Barker and Andrews testified over Ireland’s objection as to the statements the child made describing the abuse. The court conditionally admitted the statements but gave the parties the opportunity to brief the issue, indicating that it would strike the testimony from the record if the parties’ briefs convinced it that the statements should be excluded.
[¶ 9] By agreement of the parties, the child, who was then six years old, testified without either party being present in the courtroom.[1] At first, the child testified that she did not know who her “daddy” was, but when asked if she knew anyone named David she identified him as her *886 “dad.” When asked how Ireland treated her, the child responded, “Bad.” She explained that this was because “he did something wrong,” which means “when someone did something bad,” but that she had forgotten what the bad thing was. She testified that she did not like going to see her father because he spanked her. She also testified that her father asked her not to talk about “what he did,” but that she told her mother anyway. She said that she did not tell anyone else, and that she did not know whether she knew anyone named Cindy Barker. She testified that the only reason she did not want to see Ireland was because he spanked her, and that there was no other reason she did not want to see him.
[¶ 10] Ireland testified that he occasionally spanked his daughter as discipline. He explained that his daughter usually wanted to change her underwear when she changed into her pajamas, and that at these times he noticed “that her vagina was red and that her rear end was red.” Ireland attributed the redness to the child’s failure to wipe herself adequately after using the toilet and explained that he applied ointment to treat the redness and irritation. He denied engaging in any conduct with his daughter that could be considered sexual.
[¶ 11] Following the hearing, the court issued the protection from abuse order against Ireland, finding that Ireland had abused his daughter, ordering that he have no contact with her, and temporarily awarding sole parental rights and responsibilities to Walton. The court also issued an attachment to the judgment in which it explained that Barker’s testimony was admissible pursuant to M.R. Evid. 803(4) because the child’s statements, including those identifying her abuser, were pertinent to the diagnosis and treatment of her anxiety and noted that the appellant did not object to Barker’s testimony on medical-treatment grounds. The court explained that it had stricken Andrews’s testimony because it concluded that the forensic interview had not been undertaken for the purposes of diagnosis or treatment. The court further explained that it found the child’s statements to Barker to be more reliable than the child’s in-court testimony due to the child’s therapeutic relationship with Barker. The court noted that several months had passed since the child had had contact with Ireland and that her testimony indicated that she was unable to remember important facts. Ireland appealed. Walton cross-appealed, contesting the exclusion of Andrews’s testimony.
II. DISCUSSION
A. Barker’s Testimony
[¶ 12] An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is inadmissible unless an exception applies. M.R. Evid. 801(c), 802. Pursuant to M.R. Evid. 803(4), hearsay statements are not excluded by the hearsay rule if they are “[statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.” “A trial court’s decision to admit or exclude alleged hearsay evidence is reviewed for an abuse of discretion.” State v. Guyette, 2012 ME 9, ¶ 11, 36 A.3d 916. When the trial court must make preliminary factual findings pursuant to M.R. Evid. 104(a), however, those findings are reviewed only for clear error. State v. Snow, 438 A.2d 485, 487 (Me.1981).
[¶ 13] We have previously recognized that application of M.R. Evid. 803(4) is not limited to statements made for treatment *887 of physical injuries; it applies to statements made for psychological and mental-health treatment as well.[2] For instance, in the context of a custody dispute, we affirmed the admission of a child’s statements to a licensed clinical social worker about why he was afraid of his father. Ames v. Ames, 2003 ME 60, ¶ 16, 822 A.2d 1201. In that case, the parties’ six-and-a-half-year-old son began “displaying problems with concentration, sleep, anger, fear, and stomachaches” and refused to visit his father. Id. ¶¶ 2, 4. The mother sought the advice of a licensed clinical social worker who “hoped to address the child’s concerns and help him become comfortable with his father.” Id. ¶ 5. The child told the social worker that he was afraid of his father and that it was the child’s idea to stop visitation. Id. At trial, the social worker testified about the child’s statements that he was afraid of his father and did not want to visit him. Id. ¶ 7. We explained that the child’s statements to the social worker “explained the source of his fear” and concluded, “Given that the purpose of the treatment was to identify the cause of his fear and overcome it, this statement was pertinent to his diagnosis and treatment and [was] properly admitted.” Id. ¶ 16.
[¶ 14] Similarly, we held that a nurse practitioner’s diagnosis of a young woman’s “depression, anxiety, and situational stress secondary to emotional abuse by [her] boyfriend” was admissible at the boyfriend’s trial for the woman’s subsequent murder. State v. Cookson, 2003 ME 136, ¶¶ 18, 26, 837 A.2d 101. In that case, the woman told the nurse practitioner that she was depressed because her boyfriend had been stalking and harassing her. Id. ¶¶ 18-19. We held that the nurse practitioner’s testimony about these statements was admissible pursuant to M.R. Evid. 803(4) because “[the victim’s] statements to the nurse about having a problem with Cookson and about Cookson following and stalking her were made to describe to the nurse the external source of her depression.” Id. ¶ 26. We further explained that “[the victim’s] statements were also pertinent to her treatment, including the provision of antidepressant drugs, given by the nurse practitioner.” Id.
1. The Reliability of the Statements
[¶ 15] Ireland argues that the child’s statements to Barker should have been excluded because they lacked the in-dicia of reliability typically associated with statements made for the purpose of securing medical treatment. The reliability of a hearsay statement, however, goes to its weight, not its admissibility; it is a matter for the fact-finder to consider in its evaluation of all the evidence, and not for the court to consider in determining the admissibility of the statement. See Handrahan v. Malenko, 2011 ME 15, ¶¶ 19-20, 12 A.3d 79 (concluding that the fact-finder “was justified in [its] assessment of the reliability of the child’s out-of-court statement” where the child was not shown to have a “strong motivation ... to be entirely honest with her physician for purposes of medical diagnosis and treatment” (quotation marks omitted) (alteration omitted)); *888 Field & Murray, Maine Evidence § 803.4 at 479 (6th ed.2007) (explaining that a statement’s “trustworthiness is less when the purpose is [for diagnosis only rather than] for treatment, but this goes to its weight rather than its admissibility”); see also Danaipour v. McLarey, 386 F.3d 289, 297-98 (1st Cir.2004) (holding that a mother’s statements to a medical provider describing two young children’s disclosures of sexual abuse were admissible pursuant to Fed.R.Evid. 803(4) and observing that “[t]he [fact-finder] carefully considered the fact that statements by a young child, even if accurately recounted by an adult, may not reflect the truth”); United States v. George, 960 F.2d 97, 100 (9th Cir.1992) (“As a general matter, the age of the child and her other personal characteristics go to the weight of the hearsay statements rather than their admissibility.”) Absent a change to the rules of evidence, we decline to require an additional showing of reliability for hearsay statements that fall within the Rule 803(4) exception.[3]
[¶ 16] Although the trial court did not explicitly find that the statement was made for the purpose of medical diagnosis or treatment, we must assume that it made this preliminary finding. See Pelletier v. Pelletier, 2012 ME 15, ¶20, 36 A.3d 903 (“In the absence of a motion for additional findings of fact ... we will infer that the trial court made any factual inferences needed to support its ultimate conclusion.”). The trial court’s implicit finding concerning the purpose of the child’s statements was supported by Barker’s testimony that she explained her role to the child and that the child’s statements were important for developing a treatment plan. The court acted well within its role as fact-finder by inferring the purpose of the child’s statements. See Snow, 438 A.2d at 487-88 (explaining that the fact-finder is permitted to draw reasonable inferences in making a finding preliminary to the admission of evidence). The child was sent to the therapist because her mother was concerned about the child not feeling loved, and Barker’s goal was to treat the child for anxiety. Although these facts could arguably support a finding that the statements were not made for purposes of diagnosis or treatment, on this record we cannot conclude that the trial court’s preliminary factual determination constituted clear error. See id. at 487 (“Use of the clearly erroneous test to review the trial judge’s preliminary finding of fact recognizes the superior opportunity that he enjoyed to hear the evidence as it was presented through live witnesses .... ” (quotation marks omitted)).
2. The Pertinence of the Perpetrator’s Identity to Diagnosis or Treatment
[¶ 17] Ireland’s primary contention is that the portions of the child’s statements identifying Ireland as her abuser were not pertinent to diagnosis or treatment because they served “merely [to] affix fault or blame.” See State v. Sickles, 655 A.2d 1254, 1257 (Me.1995). “Pertinence, within the contemplation of Rule 803(4), is an objective consideration beyond the declarant’s state of mind.” Id. (quotation marks omitted). “Pertinence may be tested by asking whether the information is of a type on which a physician could reasonably rely to form a diagnosis or provide treatment.” Id.
[¶ 18] In many cases, extraneous details of an assault, including the identity of the perpetrator, may not be pertinent to *889 medical diagnosis or treatment. For instance, in a case in which a victim described the time and location of an alleged rape and identified her brother as the perpetrator, we concluded:
That it was intercourse that caused [the victim] to see the doctor and that it occurred the previous evening are facts reasonably pertinent to the diagnosis and treatment.... But the identity of the perpetrator and the scene of the alleged rape do not fall within that hearsay exception.
State v. True, 438 A.2d 460, 467 (Me.1981). Similarly, we concluded that hearsay statements describing medically irrelevant details of a sexual assault, such as that the victim “asked that it stop,” were improperly admitted pursuant to M.R. Evid. 803(4) where the testifying physician’s “role in examining the victim was limited to providing emergency room care” and the doctor “did not indicate whether or how the knowledge that the victim may have ‘asked that it stop’ helped her in her diagnosis.” Sickles, 655 A.2d at 1257.
[¶ 19] We have concluded, however, that certain details that may not be relevant to treatment for physical injuries may be pertinent to treatment for emotional or psychological trauma. For instance, we determined that a sexual-assault victim’s statement to a doctor that she had been threatened with a knife “pertained to the emotional trauma that the physician was ... addressing” where “the physician prefaced his remark by saying that the emotional ramifications of rape are a significant part of the victim’s problem in relation to treatment.” State v. Rosa, 575 A.2d 727, 729 (Me.1990). Similarly, in Ames, we determined that a young child’s statement that he was afraid of his father was pertinent to diagnosis and treatment “[g]iven that the purpose of the treatment was to identify the cause of his fear and overcome it....” 2003 ME 60, ¶¶ 14, 16, 822 A.2d 1201.
[¶ 20] Here, Barker testified that the identity of the child’s abuser was important for developing a treatment plan for the child. Under these circumstances, as in almost any case involving a child who is abused by a family member, the identity of the perpetrator may indeed be pertinent to diagnosis and treatment. See Danaipour, 386 F.3d at 297 (“Child therapists routinely, as part of their diagnosis or treatment, obtain the type of statements made by the patients here ... about the identity of the perpetrator of the abuse.... [Such statements] are usually reasonably pertinent to treatment of the child.”); United States v. Joe, 8 F.3d 1488, 1494 (10th Cir.1993) (“[W]here the abuser is a member of the family or household, the abuser’s identity is especially pertinent to the physician’s recommendation regarding an appropriate course of treatment....”); Morgan v. Foretich, 846 F.2d 941, 949-50 (4th Cir.1988) (“[A] physician in determining treatment may rely on factors in child abuse cases such as an assailant’s identity that would not be relied on were the patient an adult.”); United States v. Renville, 779 F.2d 430, 437 (8th Cir.1985) (“The exact nature and extent of the psychological problems which ensue from child abuse often depend on the identity of the abuser.”). The trial court did not abuse its discretion by admitting evidence of the statements the child made to Barker identifying Ireland as her abuser.
B. Andrews’s Testimony
[¶ 21] Walton argues that the court abused its discretion by excluding Andrews’s testimony. Because Walton obtained a favorable result in the trial court, and we affirm the court’s opinion, we would not ordinarily reach this issue. In re Johnna M., 2006 ME 46, ¶ 7, 903 A.2d 331; see also Storer v. Dep’t of Envtl. Prot., 656 A.2d 1191, 1192 (Me.1995); Ullis v. Town of Boothbay Harbor, 459 A.2d 153, *890 155-56 (Me.1983). Nevertheless, we note that the court did not commit an abuse of discretion by excluding Andrews’s testimony based on its conclusion that the forensic interview was not undertaken for the purpose of diagnosis or treatment. Andrews’s role was to collect and assess evidence of abuse. When an interview is conducted primarily for the purpose of collecting evidence and determining whether abuse occurred, the court may conclude that statements made during that interview are not made for purposes of diagnosis or treatment. See M.R. Evid. 803(4); Handrahan, 2011 ME 15, ¶ 16, 12 A.3d 79 (observing that, where the interviewer “conducted a forensic interview of the child in her capacity as co-director of the Spurwink Child Abuse Program” it was “not clear that the child’s statements ... were made for purposes of medical diagnosis or treatment”). The court did not abuse its discretion by excluding evidence of statements the child made during the forensic interview.
C. The Court’s Finding of Abuse
[¶ 22] A plaintiff seeking an order for protection from abuse must prove by a preponderance of the evidence that the defendant abused the plaintiff. 19-A M.R.S. § 4006(1) (2013). We review a trial court’s finding of abuse for clear error “and will affirm a trial court’s findings if they are supported by competent evidence in the record, even if the evidence might support alternative findings of fact.” Handrahan, 2011 ME 15, ¶ 13, 12 A.3d 79 (quotation marks omitted); see also Jacobs v. Jacobs, 2007 ME 14, ¶5, 915 A.2d 409.
[¶ 23] Ireland argues that the court’s finding of abuse was clearly erroneous because the child, during her in-court testimony, effectively denied that any abuse had occurred. Ireland contends that the court was required to accept the child’s testimony as being more reliable than the statements she made to Barker. This contention is unpersuasive. “No principle of appellate review is better established than the principle that credibility determinations are left to the sound judgment of the trier of fact.” Weinstein v. Sanborn, 1999 ME 181, ¶ 3, 741 A.2d 459. Moreover, we have previously held that a child’s out-of-court statements provide sufficient evidence to support a finding, by a preponderance of the evidence, of abuse, even when the child testifies that the abuse did not occur and that he does not remember making the earlier statement describing the abuse. In re Charles Jason R., Jr., 572 A.2d 1080, 1081-82 (Me.1990).
[¶ 24] Here, the trial court explained that it found the child’g statements to Barker to be more credible than the child’s in-court testimony. See White v. Illinois, 502 U.S. 346, 355-56, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (“[F]actors that contribute to the statements’ reliability cannot be recaptured even by later in-court testimony. ... [A] statement made in the course of procuring medical services ... carries special guarantees of credibility that a trier of fact may not think replicated by courtroom testimony.”). The court found the child’s testimony to be confusing and contradictory and also noted the child’s inability to recall certain basic facts during her testimony. Because credibility determinations are exclusively within the province of the fact-finder, Ireland’s contention that the child’s testimony must be given more weight than the statements she made to her therapist is unavailing. See In re Charles Jason R., Jr., 572 A.2d at 1081 (“Once admitted and relied upon by the court, [the child’s out-of-court] statement amply supported the court’s finding [of abuse] by a preponderance....”). The evidence was sufficient to support the court’s finding of abuse by a preponderance of the evidence.
*891 The entry is:
Judgment affirmed.

. The court, after conducting preliminary questioning, concluded that the child was competent to testify. Neither party has challenged that determination on appeal.

. A number of federal courts have also recognized that the exception in Fed.R.Evid. 803(4), which is substantively identical to M.R. Evid. 803(4), applies to statements made for the purpose of psychological or mental-health treatment. See, e.g., Morgan v. Foretich, 846 F.2d 941, 948-50 (4th Cir.1988) (applying rule to child’s statements to a psychologist concerning sexual abuse); United States v. Kappell, 418 F.3d 550, 556-57 (6th Cir.2005) (applying rule to child’s statements to a psychotherapist); United States v. Yellow, 18 F.3d 1438, 1442 (8th Cir.1994) (explaining that the Eighth Circuit has "consistently upheld the admission of statements made to psychologists or trained social workers” that otherwise meet the rule’s requirements).

. Because this is not a criminal case, we do not address whether the Confrontation Clause may require additional guarantees of trustworthiness for the admission of hearsay statements in criminal prosecutions. See Handrahan v. Malenko, 2011 ME 15, ¶ 16 n. 4, 12 A.3d 79.