MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2015 ME 82
Docket:      Fra-14-180
Argued:      February 11, 2015
Decided:     July 7, 2015

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

## STATE OF MAINE

v.

## JOHN A. FAHNLEY

SAUFLEY, C.J.

[¶1]  John A. Fahnley appeals from a judgment of conviction of sexual abuse of a minor (Class C), 17-A M.R.S. § 254(1)(A-2) (2014), entered by the court (Franklin County, *Mills, J.*) after a jury trial.  Fahnley argues that (A) the court improperly applied the "first complaint" rule and (B) the prosecutor committed misconduct in his closing arguments that deprived Fahnley of a fair trial.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  Viewed in the light most favorable to the jury's verdict, the evidence in the record supports the following facts.  *State v. Diana*, 2014 ME 45, ¶ 2, 89 A.3d 132.  In August 2008, the victim, a fourteen-year-old boy, was a guest for several days in the home of John A. Fahnley, a longtime family friend who was then about fifty years old.  One night, after the victim had become intoxicated and passed out,

2

he awoke to find Fahnley removing his belt. Fahnley pulled the victim's pants down, undressed him, and put his mouth on the victim's penis, testicles, and rectum.[1]

[¶3] Based on information about this and other conduct, in December 2012, Fahnley was charged by a complaint that, as amended, alleged two counts of sexual abuse of a minor (Class C), 17-A M.R.S. § 254(1)(A-2), and one count of sexual abuse of a minor (Class D), 17-A M.R.S. § 254(1)(A) (2014). He was later charged by indictment with gross sexual assault (Class A), 17-A M.R.S. § 253(1)(A) (2014), and two counts of sexual abuse of a minor (Class C), *id.* § 254(1)(A-2).

[¶4] The court held a three-day jury trial in February 2014. The State presented testimony from four witnesses: the victim's mother, the investigating detective from the Franklin County Sheriff's Office, a physician assistant who had treated Fahnley, and the victim himself. On direct examination by the State, the prosecutor asked the victim's mother the following question: "[W]hen was it that [the victim] revealed to you what had happened?" She answered, "It was a few days after his 18th birthday, September I would say 5th or 6th, 2011." She was

---

[1] Although Fahnley contends that the evidence was insufficient for the jury to convict him, viewing the evidence in the light most favorable to the State, the jury could rationally have found beyond a reasonable doubt that Fahnley "engage[d] in a sexual act with another person, not [his] spouse, who [was] either 14 or 15 years of age," and that Fahnley was "at least 10 years older than the other person." 17-A M.R.S. § 254(1)(A), (A-2) (2014); *see State v. Kittredge*, 2014 ME 90, ¶ 31, 97 A.3d 106.

later asked, "[I]n September of 2011 I think you indicated is when . . . you were told of the allegations by [the victim], does that sound right?" She responded, "Correct." Asked, "how old was he?" she replied, "He was 18." She testified that her son had spoken to her at age eighteen because "he said he didn't want [her] to have to deal with it with him as a minor." The victim's mother did not testify about the content of any statements made by the victim and did not provide any details about what he told her.

[¶5] During the State's direct examination of the victim, the prosecutor asked, "[Y]ou waited until you were 18 years old to tell your mom; is that right?" and the victim answered, "Yes." Asked for his rationale, he testified that he did not tell his mother until he was an adult because he "felt like it might not be as big a burden on her." The State also elicited testimony that the victim had spoken with his ex-girlfriend about what had happened. Specifically, the State asked, "Who was the first person that you told about what had happened between you and John Fahnley?" The victim replied, "My ex-girlfriend . . . ." The victim did not testify to *what* he said to either his mother or his girlfriend.

[¶6] Fahnley did not object to those questions by the prosecutor. Fahnley's counsel cross-examined both the victim and the investigating detective about inconsistent statements that the victim had made to his ex-girlfriend, the detective,

4

and the Massachusetts police regarding whether there had been anal sex between him and Fahnley.

[¶7]  Fahnley did not testify or offer any other evidence.  The court provided thorough instructions to the jury and specifically instructed, "the opening statements and the closing arguments of the attorneys are not evidence"; "[d]uring your deliberations, if your memory of the evidence differs from what the attorneys say, it is your memory that controls"; and "[t]he fact that the defendant chose not to testify in this case also is not evidence.  Under our law he has an absolute right not to testify.  You are not permitted to speculate or try to guess why he did not testify."

[¶8]  As part of the State's closing argument, the prosecutor argued, "[The victim] is the only one who holds the evidence to this case, other than John Fahnley, they're the only two people who were in the house in Madrid, Maine, in August, 2008, when these events occurred."  He then argued that believing the victim is "all that it takes to convict John Fahnley of these charges."  Addressing the jury's responsibility to weigh the credibility of witnesses, the prosecutor argued, "[The victim's] testimony was very strong.  And I suggest that when you recall how he testified here on the stand you will agree that his testimony was very strong."  He further argued, "What [the victim] learned is that John Fahnley is a sexual predator who uses alcohol, drugs and gifts to buy his way into the heart of a

slender young boy." He also told the jury that Fahnley had "violated the trust of a whole community, of all of us."

[¶9] Fahnley raised no objection and proceeded to his closing argument. Fahnley emphasized inconsistencies in the victim's statements to others about what had happened. He specifically argued that the victim had "indicated to his girlfriend and Detective Darling [of Massachusetts] that the sex he had with John Fahnley was oral and anal both ways."

[¶10] In rebuttal, the prosecutor responded to the reference to anal sex by arguing, "And the times where anal sex was involved, it happened later and they have not been charged. They're not at issue here today."

[¶11] The prosecutor also argued, "Every crime against a child and every wrong against a weak or vulnerable person, every advantage taken against a person who is too old or fragile to defend themselves, it's a tear in the fabric of our society." He argued, "The damage done to one of these victims is spread to all of us. It affects mothers and fathers and brothers and sisters, aunts and uncles and friends and neighbors." He argued that "justice is not just for [the victim]. It is for all of us." He closed by saying, "We provide many protections for a defendant and Mr. Fahnley has the advantage of those protection[s]. But we also need protection for our communities, and that is another one of your jobs that is performed here today, in meting out the justice that will be administered."

6

[¶12]  Fahnley objected to the last part of the State's rebuttal argument on the ground that "the effect of that will be to [evoke] some emotion from the jury to this victim. . . . [I]t's apt to prompt some inappropriate justice that they feel they have to do something for this victim."  The court indicated to counsel that it would give the jury a curative instruction that the jury should disregard any argument that it was the jury's job to protect society.  The court gave the following instructions:

> Ladies and gentlemen, with regard to the prosecutor's rebuttal argument, I'm going to ask you to disregard his suggestion that it is your job to somehow protect society.  Your job in this case, as I have now told you several times, is to listen to the evidence, the testimony and use it to decide which testimony you find believable, to decide the facts, which means to decide what happened, apply the law that I have given to you and will continue to give to you and give us your verdict, either guilty or not guilty of each charge.  That's your job.  Your job is not to send a message.  You're not—your job is not to protect society somehow.  Your job is to do justice by doing what I have told you to do yesterday and today.
>
> . . . .
>
> Further, you cannot allow your emotions or any feelings of prejudice or sympathy that you may have developed during the course of this trial to play any part in your verdict. . . .

[¶13]  After more than a day of deliberations, the jury returned a unanimous verdict finding Fahnley not guilty of gross sexual assault and guilty only of the Class C charge of sexual abuse of a minor from August 2008.[2]  On April 3, 2014,

---

 [2]  Although Fahnley argues that the jury's verdict finding guilt on the sexual abuse of a minor charge is inconsistent with its verdict on the gross sexual assault charge, a conviction of gross sexual assault

the court sentenced Fahnley to five years of imprisonment, with all but three years suspended, and two years of probation, and ordered him to pay $25 to the victims' compensation fund. Fahnley appealed. *See* 15 M.R.S. § 2115 (2014); M.R. App. P. 2.

## II. DISCUSSION

[¶14] Fahnley challenges the admission of testimony of the victim's mother indicating when the victim told her what had happened. He also argues that the State committed prosecutorial misconduct in its closing arguments. We address each issue separately.

A.    First Complaint Rule and Hearsay

[¶15] Because Fahnley did not object to the testimony about the victim's report to his mother, we review his argument on appeal for obvious error. *See State v. Lovejoy*, 2014 ME 48, ¶ 19, 89 A.3d 1066; *see also* M.R. Crim. P. 52(b). For us to vacate a conviction based on the obvious error standard of review, "there must be (1) an error, (2) that is plain, and (3) that affects substantial rights." *Lovejoy*, 2014 ME 48, ¶ 19, 89 A.3d 1066 (quotation marks omitted). "If these conditions are met, we will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and

---

requires proof of compulsion, which the conviction of sexual abuse of a minor did not. *Compare* 17-A M.R.S. § 253(1)(A) (2014) *with* 17-A M.R.S. § 254(1)(A-2).

8

integrity or public reputation of judicial proceedings." *Id.* (quotation marks omitted).

[¶16]  Thus, we must first determine whether the admission of the mother's statement was error.  We take this opportunity to resolve an area of confusion regarding the first complaint rule.

[¶17]  Fahnley argues that the mother's testimony regarding when the victim told her that something had happened was inadmissible hearsay.  Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  M.R. Evid. 801(c);[3] *see also Walton v. Ireland*, 2014 ME 130, ¶ 12, 104 A.3d 883 (stating that "[a]n out-of-court statement offered to prove the truth of the matter asserted is hearsay").  Hearsay is generally inadmissible "except as provided by law or by these rules," M.R. Evid. 802,[4] as, for instance, if it falls within a specific rule-based exception, *see* M.R. Evid. 803-804.

[¶18]  Hearsay has three primary components: it must be (1) a statement of a person, (2) made in an "out-of-court" setting, and (3) offered for the truth of the

___

[3]  The restyled Maine Rule of Evidence 801(c), effective January 1, 2015, uses slightly different language: "Hearsay means a statement that: (1) The declarant does not make while testifying at the current trial or hearing; and (2) A party offers in evidence to prove the truth of the matter asserted in the statement."

[4]  The restyled Maine Rule of Evidence 802, effective January 1, 2015, states that hearsay is not admissible unless otherwise provided by statute, by the Maine Rules of Evidence, or by "[o]ther rules prescribed by the Maine Supreme Judicial Court."

matter asserted in the statement. *Walton*, 2014 ME 130, ¶ 12, 104 A.3d 883; *see* M.R. Evid. 801(c). Thus, if the in-court testimony does not report a statement made outside of the courtroom or if the statement is not offered "to prove the truth of the matter asserted," it is not hearsay. *See* M.R. Evid. 801(c).

[¶19] The first complaint rule does not contravene Maine Rule of Evidence 801(c) because it recognizes a purpose for admitting the proffered out-of-court statement *other than for its truth*. The first complaint doctrine originally arose because a "hue and cry" was required as a necessary part of a criminal prosecution for rape based on the assumption that a victim would speak out if a sexual assault had occurred. *Commonwealth v. King*, 834 N.E.2d 1175, 1187-88 (Mass. 2005). "The rationale for the different treatment of rape cases was the then current belief that after becoming a victim of [sexual] assault against her will . . . [the victim] should have spoken out." *Id.* at 1188 (alterations in original) (quotation marks omitted). "That she did not, that she went about as if nothing had happened, was in effect an assertion that nothing violent had been done." *Id.* (quotation marks omitted).

[¶20] Based on these concerns, the first complaint rule came into being. Pursuant to the rule, "[t]he bare *fact* that a complaint has been made is admissible as part of the State's case in chief to forestall the natural assumption that in the absence of a complaint, nothing violent had occurred." *State v. True*, 438 A.2d

10

460, 464 (Me. 1981). The statement is not offered for its truth, and therefore is not hearsay. *See State v. Krieger*, 2002 ME 139, ¶ 18, 803 A.2d 1026.[5]

[¶21] The first complaint rule may be best understood as a narrow, common law application of a concept similar to the one that is now embodied in M.R. Evid. 801(d)(1). Pursuant to Rule 801(d)(1), when the declarant testifies at trial, a "prior consistent statement by the declarant, whether or not under oath, is admissible only to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive."[6] The first complaint rule similarly authorizes the admission of the fact of a complaint of sexual assault and the reported time and place of the assault for purposes of corroborating a victim's testimony, but only to rebut the assumption that, without a complaint, no crime occurred. *See Krieger*, 2002 ME 139, ¶ 18, 803 A.2d 1026; *True*, 438 A.2d at 464-65. "The fact that a complaint has been made is generally admissible only to corroborate the victim's testimony, not to prove the crime." *State v. Lafrance*, 589 A.2d 43, 45 (Me. 1991). Statements admissible as first complaints and statements otherwise admissible under Rule 801(d)(1) are distinct. A first complaint

---

[5] The rule may be considered by many to be both paternalistic and anachronistic. *See Commonwealth v. King*, 834 N.E.2d 1175, 1188 (Mass. 2005). Nonetheless, it is a significant part of our jurisprudence, and we do not disturb the rule. *Cf. id.* (adhering to the rule despite its "'sexist,' 'outmoded' and 'invalid' origins"). We write primarily to clarify the limitations on its use.

[6] This language is unchanged in the new restyled Maine Rules of Evidence, which took effect on January 1, 2015.

statement cannot include anything other than a bare assertion of the assault, while a prior consistent statement may include more details. In addition, a statement that is truly a first complaint because it is limited to the assertion that an assault occurred needs no "express or implied charge against the declarant of recent fabrication or improper influence or motive" in order to be admissible. *See* M.R. Evid. 801(d)(1).

[¶22] Thus, in offering a statement under the first complaint rule, it is important that the witness provide no details other than the reported time and place of the assault—not the perpetrator's identity, the nature of the touching, or the details of the harm inflicted—because such details are not necessary to satisfy the narrow purpose for which first complaint evidence is admitted, i.e., to corroborate that a sexual assault has occurred. *See Krieger*, 2002 ME 139, ¶ 18, 803 A.2d 1026. "Neither the details of the complaint, nor the identity of the perpetrator . . . are admissible." *Id.* (citing *Lafrance*, 589 A.2d at 45). Out-of-court statements containing those details are generally hearsay and are admissible only if (A) they are excluded from the definition of hearsay pursuant to Rule 801(d), for instance if the statements are offered to rebut a charge of recent fabrication under 801(d)(1), or, (B) if offered to establish the truth of the statements, they fit within an exception to the hearsay rule, see M.R. Evid. 803-804, such as the excited utterance exception, *see* M.R. Evid. 803(2).

[¶23]  Although they are distinct concepts, in our opinions we have often discussed the first complaint rule while also addressing hearsay-related questions concerning the separate admissibility of the detailed content of an allegation of sexual assault.  For example, we held that, if an out-of-court statement offered in evidence reports details of the assault but is spoken as an excited utterance, *see* M.R. Evid. 803(2), the details expressed can be admitted for their truth as an exception to the hearsay rule.  *See Lafrance*, 589 A.2d at 45; *True*, 438 A.2d at 464.  In those circumstances, the evidence is not admitted only to rebut an assumed lack of truthfulness pursuant to the first complaint rule; instead, the evidence is admitted for its truth pursuant to an exception to the hearsay rule.

[¶24]  To the extent that we have, when discussing the admissibility of the *content* of a first complaint, occasionally referred to the first complaint rule as a hearsay exception, *see, e.g.*, *State v. Naylor*, 602 A.2d 187, 189 (Me. 1992), we clarify today that it is *not* an exception to the hearsay rule.  An out-of-court statement truly offered as a first complaint must contain no details of the assault and cannot be offered for the truth of the statement's content.  Rather, *the fact that a complaint has been made* is admissible because it is not hearsay; the statement is admitted not for the truth of the matter asserted in the victim's complaint but instead to rebut the assumption that, in the absence of a complaint, nothing happened.  *See Krieger*, 2002 ME 139, ¶ 18, 803 A.2d 1026.

[¶25]  To be clear, although an out-of-court statement offered through a witness at trial that contains details of an assault could be admissible, for example, as a prior consistent statement pursuant to Maine Rule of Evidence 801(d)(1), or through the application of a hearsay exception pursuant to, for example, Maine Rule of Evidence 803(2), it is not admissible pursuant to the first complaint rule. *See Krieger*, 2002 ME 139, ¶ 18, 803 A.2d 1026.

[¶26]  Because of the limitations of the first complaint rule, as distinct from hearsay exceptions or prior consistent statements, the best practice for offering first complaint evidence is for the prosecutor to be allowed to lead the witness to avoid eliciting testimony regarding any details.  Thus, the prosecutor would ask the witness four questions: (1) Did the victim tell you that [she or he] had been sexually assaulted? (2) When did the victim tell you? (3) Did the victim tell you where the assault occurred? and (4) Did the victim tell you when the assault occurred?

[¶27]  In the matter before us, the victim's mother did not even testify that her child told her he had been assaulted.  Instead, she answered the prosecutor's questions about *when* the victim told her about "what had happened."  If we assume that this testimony is "first complaint" testimony,[7] offered to rebut an

---

[7]  The mother did not identify Fahnley as the perpetrator, and she did not testify to any other details of the assault except for the timing of the report.  Because her testimony did not include details of the assault, we need not analyze the admissibility of such evidence either as a prior consistent statement

14

assumed claim of fabrication, we next consider whether the fact that the victim complained to his mother is inadmissible as first complaint evidence either (1) because the complaint was not made "shortly after the event," *Krieger*, 2002 ME 139, ¶ 18, 803 A.2d 1026, or (2) because the complaint to his mother was not the *first* complaint that the victim made to another person. Again, we review these issues for obvious error because Fahnley did not object to the mother's testimony.

1. Timing of the Complaint

[¶28] We first address whether the report was inadmissible as first complaint evidence because the complaint was not made shortly after the event. The victim was a minor when he stayed with Fahnley. He and his mother each explained his reason for not wanting to speak about the events with his mother until he was an adult. Because a child may be fearful or susceptible to intimidation, or may feel pressure not to tell others about a sexual assault, a child's first complaint may be admitted even if it was not made immediately after the event as long as the child had a reason for not making the complaint contemporaneously with the assault. *See State v. Mulkern*, 85 Me. 106, 107, 26 A. 1017 (Me. 1892); *see also King*, 834 N.E.2d at 1189-91. In the context of this case, and in the absence of an objection, the passage of time between the sexual

---

under Rule 801(d)(1) or, if offered for its truth, as an exception to the hearsay rule, *see* M.R. Evid. 801(c), 802-804.

assault and the victim's complaint to his mother does not render the mother's testimony inadmissible under the first complaint rule. Instead, it was for the jury to consider the delay in determining the weight of the evidence to rebut the assumption that, without a complaint, nothing had happened. *See Mulkern*, 85 Me. at 107, 26 A. 1017; *Krieger*, 2002 ME 139, ¶ 18, 803 A.2d 1026.

2. "First" Complaint

[¶29] The remaining question is whether the mother's testimony that the victim told her what had happened was admissible as a "first" complaint when the evidence demonstrated that the victim had told someone else before he told his mother. We have never considered whether evidence of more than one complaint may be admitted to rebut the presumption that, without a complaint, nothing has happened. Based on the record before us, and in the absence of an objection, we conclude that the admission of the mother's testimony was consistent with the purposes of the first complaint rule and therefore admissible. Although the victim told another person about the sexual abuse before he told his mother, evidence of the complaint to his mother is admissible to rebut the natural assumption that a child would tell a parent if anything had happened. *Cf. State v. Ricker*, 2001 ME 76, ¶¶ 9-12, 770 A.2d 1021 (affirming the admission of testimony that the victim told her mother and others about the abuse to establish the fact of a complaint and

to supply a context for police questioning and the involvement of the Department of Human Services).

[¶30]  We need not determine whether, in all cases, more than one complaint of sexual abuse would be admissible.  We will not conjecture about whether, if the State offers evidence of a victim's multiple reports of abuse, the evidence at some point crosses the line from being offered to rebut the presumption that in the absence of a complaint, no sexual assault occurred to being offered as unfairly prejudicial proof that, with so many reports to others, the crime must have been committed.  *See* M.R. Evid. 403.  Accordingly, we hold only that, in this case, the court did not err in allowing the victim's mother to testify without objection that, at age eighteen, the victim told her "what had happened."

[¶31]  In sum, because Fahnley has not established "an error," he has failed to satisfy the initial prong of the obvious error standard of review.  *Lovejoy*, 2014 ME 48, ¶ 19, 89 A.3d 1066 (quotation marks omitted).  We turn then to Fahnley's assertions regarding prosecutorial misconduct.

B.    Prosecutorial Misconduct

[¶32]  Fahnley challenges several prosecutorial statements made in closing arguments as prosecutorial misconduct.  Some of his challenges were preserved through timely objection, and others were not.

1.     Preserved Claims of Prosecutorial Misconduct

[¶33]   We review the preserved claims of prosecutorial misconduct for harmless error.  *See* M.R. Crim. P. 52(a) (providing that any error "which does not affect substantial rights shall be disregarded").  Pursuant to this standard of review, "[w]hen an objection has been made to a prosecutor's statements at trial, we review to determine whether there was actual misconduct, and, if so, whether the trial court's response remedied any prejudice resulting from the misconduct." *State v. Dolloff*, 2012 ME 130, ¶ 32, 58 A.3d 1032 (citations omitted).  We will "generally defer to the determination of a presiding Justice, who has the immediate feel of what is transpiring, that a curative instruction will adequately protect against the jury's giving consideration to matters which have been heard but have been stricken as evidence."  *Id.* (quotation marks omitted).  "Any concern created by improper statements made by a prosecutor is likely to be cured by a prompt and appropriate curative instruction, especially when such an instruction is specifically addressed to the prosecutor's misconduct."  *Id.* (quotation marks omitted).

[¶34]   The prosecutor made several arguments in closing that either suggested to the jury it should protect the community through its verdict or pandered to sympathy, bias, or prejudice.  *See United States v. Johnson*, 231 F.3d 43, 47 (D.C. Cir. 2000) ("[A] prosecutor may not ask jurors to find a defendant guilty as a means of promoting community values, maintaining order, or

discouraging future crime."); *Dolloff*, 2012 ME 130, ¶ 42, 58 A.3d 1032. Nonetheless, after Fahnley objected to the prosecutor's argument, the court provided a thorough curative instruction informing the jury that it was the jury's responsibility to find the facts in the particular case, that the jury was not responsible for protecting the community, and that it could not allow emotions or feelings of prejudice or sympathy to affect the verdict. Thus, "[a]ny concern created by improper statements made by [the] prosecutor" was cured by the court's "prompt and appropriate curative instruction," which was "specifically addressed to the prosecutor's misconduct." *Dolloff*, 2012 ME 130, ¶ 32, 58 A.3d 1032 (quotation marks omitted). To the extent that Fahnley argues that the prosecutor's reference to anal sex was designed to evoke juror sympathy, that comment was made only after Fahnley himself introduced evidence and argument on that subject, and the curative instruction regarding juror sympathy directly responded to any resulting concern.

2.    Unpreserved Claims of Prosecutorial Misconduct

[¶35]   "[W]hen a defendant has not objected to statements made by the prosecutor at trial, and subsequently asserts on appeal that those statements constituted prosecutorial misconduct that deprived her of a fair trial, we review for obvious error." *Id.* ¶ 35 (citing M.R. Crim. P. 52(b)). If a defendant demonstrates on appeal that there was prosecutorial misconduct that went unaddressed by the

court, we will consider whether the error is plain—that is, whether the error is so clear under existing law that the court and the prosecutor were required to address the matter even in the absence of a timely objection. *See id.* ¶ 36. If there is error that is plain, we will then "consider whether the defendant has demonstrated a reasonable probability that the error affected her substantial rights," meaning that "the error was sufficiently prejudicial to have affected the outcome of the proceeding." *Id.* ¶ 37 (quotation marks omitted). "When a prosecutor's statement is not sufficient to draw an objection, particularly when viewed in the overall context of the trial, that statement will rarely be found to have created a reasonable probability that it affected the outcome of the proceeding." *Id.* ¶ 38.

[¶36] Here, the prosecutor argued, "[The victim] is the only one who holds the evidence to this case, other than John Fahnley, they're the only two people who were in the house in Madrid, Maine, in August, 2008, when these events occurred." He then argued that believing the victim is "all that it takes to convict John Fahnley of these charges."

[¶37] Fahnley did not object to the prosecutor's arguments, but he now contends that they violated the Fifth Amendment of the United States Constitution, which provides, "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." The Fifth Amendment, applicable to the states through section 1 of the Fourteenth Amendment, prohibits comment by a

prosecutor on a defendant's decision not to testify. *See State v. Libby*, 410 A.2d 562, 563 (Me. 1980).

[¶38] Although the prosecutor did not comment directly on the absence of testimony from Fahnley, he did indirectly alert the jury to the absence of that testimony by arguing that, of the two people in the house at the time of the alleged crime—Fahnley and the victim—only the victim provided testimony. Even if this argument suggested that the absence of Fahnley's testimony was probative of his guilt, however, we cannot conclude that the error was plain because any defect was not so clear under existing law that the court and the prosecutor were required to address the matter even in the absence of a timely objection. *See Dolloff*, 2012 ME 130, ¶ 36, 58 A.3d 1032.

[¶39] Given the nuances of trial strategy and Fahnley's overarching argument that the victim—the only person who testified about the events—was unreliable, the trial court was not bound to act sua sponte to address a prosecutorial comment indicating the absence of other witnesses from Fahnley's house during the relevant time. Especially when the court delivered an instruction before the closing arguments that the jury was not to consider the defendant's choice not to testify as evidence of guilt, *see State v. Lewis*, 1998 ME 83, ¶ 7, 711 A.2d 119, we do not discern obvious error.

[¶40]  The prosecutor also argued in closing, "[The victim's] testimony was very strong.  And I suggest that when you recall how he testified here on the stand you will agree that his testimony was very strong."  A prosecutor may not use "the authority or prestige of the prosecutor's office to shore up the credibility of a witness, sometimes called 'vouching.'"  *Dolloff*, 2012 ME 130, ¶ 42, 58 A.3d 1032.  Although the prosecutor's statements may constitute vouching, the error is not plain because the error is not so clear under existing law that the court and prosecutor were required to address the matter even in the absence of a timely objection.  *See id.* ¶ 36.  Moreover, given the court's instructions regarding the jury's role in determining the facts, any error did not affect Fahnley's substantial rights.  *See id.* ¶ 35.

3.  Cumulative Effect of Prosecutorial Statements

[¶41]  Finally, the record does not demonstrate that the cumulative effect of the prosecutor's closing arguments resulted in an unfair trial depriving Fahnley of due process.  *See Dolloff*, 2012 ME 130, ¶ 74, 58 A.3d 1032.  The court provided thorough initial instructions to the jury and offered additional instructions in response to Fahnley's objections to the prosecutor's closing arguments.  On this record, we do not conclude that Fahnley was deprived of a fair trial.

The entry is:

Judgment affirmed.

**On the briefs and at oral argument:**

Timothy E. Zerillo, Esq., Zerillo Law, LLC, Portland, for appellant John A. Fahnley

Joshua W. Robbins, Asst. Dist. Atty., Farmington, for appellee State of Maine

Franklin County Superior Court docket number CR-2012-228
FOR CLERK REFERENCE ONLY