MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 43
Docket:      And-19-186
Argued:      February 13, 2020
Decided:     April 7, 2020

Panel:       SAUFLEY, C.J., and MEAD, GORMAN,* JABAR, and HUMPHREY, JJ.

STATE OF MAINE

v.

GABRIEL J. HANSEN

HUMPHREY, J.

[¶1]  Gabriel J. Hansen appeals from a judgment of conviction of two counts of unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1) (2018), entered by the trial court (Androscoggin County, *MG Kennedy, J.*) after a jury trial, and from the sentences imposed.  We affirm both the judgment of conviction and the sentences.

---

*  Although not available at oral argument, Justice Gorman participated in the development of this opinion.  *See* M.R. App. P. 12(a)(2) ("A qualified justice may participate in a decision even though not present at oral argument.").

## I. BACKGROUND

[¶2] We view the evidence in the light most favorable to the verdict. The jury rationally could have found the following facts beyond a reasonable doubt. *See State v. Ouellette*, 2019 ME 75, ¶ 2, 208 A.3d 399.

[¶3] Hansen was a longtime friend of the minor victim's family, having previously dated and been engaged to the victim's aunt, who is the sister of the victim's mother. The victim had a close relationship with her aunt, and also maintained a close relationship with Hansen. Even after Hansen and the victim's aunt ended their relationship, he continued to babysit the victim occasionally, sometimes at the victim's mother's house and sometimes at his house.

[¶4] On more than one occasion, when the victim was alone with Hansen at his home, he brought the victim to his bedroom, where he convinced her to lie down on his bed, removed her pants, blindfolded her with a blanket or pillow, got on the bed with her, and sexually touched her. The victim could not see what was touching her because she was blindfolded, but it was something that felt "hard and soft." During one of these incidents, Hansen forced the victim "[t]o do what he wanted [her] to do." The victim was six years old the last time

she was alone with Hansen at his house. She "thought it was a game [she] played with him."

[¶5] Hansen was charged by indictment with two counts of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(C) (2018), and two counts of unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1).

[¶6] At trial, the State called the victim and the victim's mother as witnesses. During the victim's testimony, Hansen objected to leading questions asked by the prosecutor. The court overruled the objection. As the prosecutor continued to ask leading questions during direct examination of the victim, Hansen requested two different sidebar conferences. During these sidebar discussions, the court explained that it was satisfied that the State's questioning, although leading, was within permissible boundaries, given the age of the victim and the subject matter of the testimony.

[¶7] After the State rested its case, Hansen moved for a judgment of acquittal on the two counts of gross sexual assault (Class A), arguing that the evidence was insufficient for the jury to find him guilty of those offenses beyond a reasonable doubt. The State opposed the motion. The court determined that the jury could rationally find that the evidence was sufficient to support a guilty verdict on those counts and denied Hansen's motion for a judgment of acquittal.

4

[¶8] The jury found Hansen guilty on both counts of unlawful sexual contact (Class B) but acquitted him on the two counts of gross sexual assault (Class A).

[¶9] Hansen was sentenced to ten years' imprisonment on the first count of unlawful sexual contact (Class B), and a consecutive ten years, all suspended, with five years of probation on the second count of unlawful sexual contact (Class B).[1]

[¶10] Hansen timely filed both a notice of appeal from the judgment, 15 M.R.S. § 2115 (2018); M.R. App. P. 2B(b), and an application for leave to appeal his sentences, 15 M.R.S. §§ 2151, 2153 (2018); M.R. App. P. 20. The Sentence Review Panel granted Hansen leave to appeal his sentence. 15 M.R.S. § 2152 (2018); M.R. App. P. 20(g), (h).

## II. DISCUSSION

### A. Sufficiency of the Evidence

[¶11] Hansen first argues that the evidence was insufficient to support his convictions on the two counts of unlawful sexual contact (Class B).

---

[1] Hansen was also ordered to pay $70 to the Victims' Compensation Fund. 5 M.R.S. § 3360-I (2018).

[¶12] "When a defendant argues that the evidence is insufficient to support his conviction, we view the evidence in the light most favorable to the State to determine whether the fact-finder could rationally find every element of the offense beyond a reasonable doubt." *Ouellette*, 2019 ME 75, ¶ 11, 208 A.3d 399 (quotation marks omitted). The jury is free to draw all reasonable inferences from the evidence presented, and "we will vacate a judgment only where no trier of fact rationally could find proof of guilt beyond a reasonable doubt." *Id.* (quotation marks omitted).

[¶13] The crime of unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1), occurs when a person "intentionally subjects another person to any sexual contact and . . . [t]he other person, not the actor's spouse, is in fact less than 12 years of age and the actor is at least 3 years older." "Sexual contact" is defined as "any touching of the genitals or anus, directly or through clothing, other than as would constitute a sexual act, for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact." 17-A M.R.S. § 251(1)(D) (2018).

[¶14] On this record, when viewed in the light most favorable to the State, the evidence was sufficient for the jury rationally to find that the State proved each element of the charged offenses of unlawful sexual contact

6

(Class B) beyond a reasonable doubt. The parties stipulated at trial that the victim was not Hansen's spouse. *See United States v. Tkhilaishvili*, 926 F.3d 1, 18 (1st Cir. 2019) (observing that when a defendant "affirmatively agree[s] to not put the government to its proof of an element of a crime," he "relinquishe[s] all other defenses, factual and legal, pertaining to the stipulated element" (quotation marks omitted)); *State v. Brann*, 292 A.2d 173, 185 (Me. 1972). The victim testified that she was seven years old at the time of trial, and the victim's mother testified that the last time the victim had been alone at Hansen's house was in the summer of 2017, at which time the victim was six years old. There is no dispute that Hansen, who was born in December 1977, is at least three years older than the victim. The victim's testimony that she felt something "hard and soft" touch her while she was alone with Hansen in his bedroom and blindfolded with her pants down was sufficient for a jury to rationally find that Hansen subjected the victim to sexual contact. 17-A M.R.S. § 251(1)(D). Finally, based on the victim's testimony, the jury could have reasonably inferred that when Hansen sexually touched the victim, he did so "for the purpose of arousing or gratifying sexual desire or for the purpose of causing . . . offensive physical contact." *Id.*; *see also State v. Pozzuoli*, 1997 ME 91, ¶ 7, 693 A.2d 745 (holding that a jury may consider, in determining whether a defendant committed

offensive physical contact, "what a reasonable person might perceive to be offensive as well as the victim's subjective interpretation of the contact").

[¶15]  We conclude that there is sufficient evidence in the record for the jury to have rationally found every element of the offense of unlawful sexual contact (Class B) beyond a reasonable doubt.

B.     The Prosecutor's Use of Leading Questions

[¶16]   Hansen also contends that the prosecutor's leading questions during the direct examination of the child victim compromised his right to a fair trial.

[¶17]   Trial judges have "broad discretion in determining the scope" of the direct examination of a minor witness by the prosecution. *See State v. Roman*, 622 A.2d 96, 101 (Me. 1993) (quotation marks omitted).  Similarly, "the State is accorded much latitude in attempting to elicit relevant testimony from a child witness." *Id.*  In cases involving "embarrassing sex crimes, where a child would be hesitant to testify, leading questions may be particularly appropriate." *Id.* (quotation marks omitted).

[¶18] Although the victim initially struggled to describe the nature of the sexual contact to which Hansen subjected her, she never denied that Hansen had sexually abused her, and her testimony remained internally consistent in

many respects throughout.  *See State v. Spooner*, 666 A.2d 863, 865-66 (Me. 1995); *Roman*, 622 A.2d at 101; *State v. Murray*, 559 A.2d 361, 362 (Me. 1989).  To the extent that there were inconsistencies in the victim's testimony that could cast doubt on her credibility, "[t]he responsibility for weighing that testimony reside[d] with the jury." *Murray*, 559 A.2d at 362.

[¶19]  On this record, the trial court did not abuse its discretion in granting the State leeway to use leading questions in conducting its direct examination of the child victim, and the State's leading questions did not violate Hansen's right to a fair trial.  *See, e.g., Roman*, 622 A.2d at 101 (discussing the "broad discretion" afforded trial justices and the "latitude" given to prosecutors in cases involving testimony by a child victim of sexual abuse); *Lisenba v. California*, 314 U.S. 219, 236 (1941) ("[D]enial of due process is the failure to observe that fundamental fairness essential to the very concept of justice.  In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.").

C.    The Mother's "First Complaint" Testimony

[¶20]   Hansen next argues that the court allowed testimony by the victim's mother that violated the first complaint rule and constituted

inadmissible hearsay. Because Hansen never raised an objection to this testimony, we review the trial court's actions for obvious error. *State v. Hall*, 2017 ME 210, ¶ 25, 172 A.3d 467. "[T]o vacate a conviction based on the obvious error standard of review, there must be (1) an error, (2) that is plain, and (3) that affects substantial rights. If these conditions are met, we will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Id.* ¶ 26 (quotation marks omitted).

[¶21] The first complaint rule "authorizes the admission of the fact of a complaint of sexual assault and the reported time and place of the assault for purposes of corroborating a victim's testimony, but only to rebut the assumption that, without a complaint, no crime occurred." *State v. Fahnley*, 2015 ME 82, ¶ 21, 119 A.3d 727; *see also Commonwealth v. King*, 834 N.E.2d 1175, 1187-89 (Mass. 2005). Because first complaint testimony is offered only to corroborate the fact that a complaint was made, such testimony "is not offered for its truth, and therefore is not hearsay." *Fahnley*, 2015 ME 82, ¶ 20, 119 A.3d 727.

[¶22] After carefully reviewing the transcript, we are satisfied that the statement Hansen challenges on appeal, although graphic, did not identify

Hansen, was a bare statement of the type of contact alleged, and did not violate the first complaint rule. *See State v. Tripp*, 634 A.2d 1318, 1321 (Me. 1994). Moreover, the details in the statement could be considered "necessary to identify the complaint as being relevant to the charge on which the accused [wa]s being tried." *State v. Joel H.*, 2000 ME 139, ¶ 23, 755 A.2d 520 (quotation marks omitted). The trial court did not err in admitting this testimony in evidence.

[¶23] However, we take this opportunity to emphasize that when first complaint testimony is offered, the proponent should "be allowed to lead the witness to avoid eliciting testimony regarding any details," and should "ask the witness four questions: (1) Did the victim tell you that [she or he] had been sexually assaulted? (2) When did the victim tell you? (3) Did the victim tell you where the assault occurred? and (4) Did the victim tell you when the assault occurred?" *Fahnley*, 2015 ME 82, ¶ 26, 119 A.3d 727. This constitutes the "best practice for offering first complaint evidence." *Id.*

D.     Sentencing

[¶24]    Finally, Hansen argues that the sentences imposed are "disproportionate and extreme." He also argues that the court did not conduct

a proper sentencing analysis and failed to apply the relevant criteria in imposing consecutive sentences.

[¶25] Our review of criminal sentences is guided by 15 M.R.S. §§ 2154 and 2155 (2018). *State v. Stanislaw*, 2013 ME 43, ¶ 15, 65 A.3d 1242 (*Stanislaw II*). When determining the sentence to be imposed upon conviction for a felony, the sentencing court must conduct a *Hewey* analysis, a three-step sentencing analysis codified at 17-A M.R.S. § 1252-C (2018).[2] *See State v. Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993).

1.  The *Hewey* Analysis

[¶26] The first step of the analysis requires the court to determine a basic term of imprisonment based on the nature and seriousness of the offense as committed by the defendant. *See* 17-A M.R.S. § 1252-C(1). In the second step, the court must "determine the maximum period of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case." *Id.* § 1252-C(2). At the third step, the

---

[2] Substantial portions of the Maine Criminal Code in Title 17-A, including all of its sentencing provisions, were recently repealed and replaced. P.L. 2019, ch. 113 (effective May 16, 2019). This matter was fully litigated and Hansen was sentenced prior to the effective date of the new sentencing provisions. Therefore, all citations to sentencing statutes in this opinion are to the repealed 2018 versions in effect at the relevant time. As they apply to this appeal, the relevant text is substantively unchanged in the new versions of the statutes. *See* P.L. 2019, ch. 113, § A-2 (to be codified at 17-A M.R.S. §§ 1501, 1602, 1604, 1608).

court must "determine what portion, if any, of the maximum period of imprisonment should be suspended and, if a suspension order is to be entered, determine the appropriate period of probation to accompany that suspension." *Id.* § 1252-C(3).

[¶27]   We review de novo for misapplication of principle the basic sentence imposed at the first step of the analysis, and we review the maximum sentence and the final sentence determined at steps two and three for an abuse of discretion. *Stanislaw II*, 2013 ME 43, ¶ 17, 65 A.3d 1242.  We review the sentencing court's analysis at each step to determine "whether [it] disregarded the relevant sentencing factors or abused its sentencing power." *Id.*

[¶28]   At step one, the court properly assessed the nature and seriousness of each offense. *See* 17-A M.R.S. § 1252-C(1).  The court considered the victim's age, Hansen's age, the specific manner in which the offenses were committed, and the fact that Hansen was a familiar and trusted person in the victim's life. *See State v. Parker*, 2017 ME 28, ¶¶ 4, 8, 156 A.3d 118; *Stanislaw II*, 2013 ME 43, ¶¶ 10, 22, 65 A.3d 1242; *State v. Soucy*, 2006 ME 8, ¶ 18, 890 A.2d 719.  The court then found that Hansen's conduct was "in the mid to high end on the continuum" of severity, and set the basic sentence at five to ten years on each count.  *Cf. Soucy*, 2006 ME 8, ¶¶ 7, 18, 890 A.2d 719 (finding no

misapplication of principle where basic sentence was set at six years on each count of Class B unlawful sexual contact).

[¶29]  The maximum authorized sentence for a Class B offense is ten years.  17-A M.R.S. § 1252(2)(B) (2018).  Although it is rare for the basic sentence "to be appropriately set at or near the statutory maximum," a sentencing court may properly set the basic sentence at or near the maximum if its "analysis demonstrates that the defendant's crime was considered to be among the most serious ways in which the crime might be committed." *State v. Stanislaw*, 2011 ME 67, ¶¶ 12, 13, 21 A.3d 91 (*Stanislaw I*) (quotation marks omitted).  One factor that can support a basic sentence at or near the maximum is the selection of "extremely young children as victims." *Id.* ¶ 12; *see also* 17-A M.R.S. § 1151(8)(A) (2018).

[¶30]  After considering the victim's very young age and the manner in which the offenses were committed, the court stated that "it's hard to imagine . . . how much more serious it could have been."  Therefore, the court did not misapply principle in setting the basic period of incarceration toward the higher end of the spectrum, near the maximum term of ten years. *See Soucy*, 2006 ME 8, ¶¶ 7, 18, 890 A.2d 719.

14

[¶31]   At the second step of the analysis, the court appropriately considered aggravating and mitigating factors, including Hansen's limited criminal history, likelihood of reoffending, motivation or reason for engaging in the criminal conduct, employment history, mental health issues, physical disabilities, and lack of compassion, remorse, or acceptance of responsibility. 17-A M.R.S. § 1252-C(2).   The court also considered the effect that Hansen's conduct had on the victim and the victim's family.   The court determined that "the aggravating factors grossly outweigh[ed] the mitigating factors," and concluded that the maximum sentence would be in "the ten-year range."   The court did not abuse its discretion in setting the maximum period of incarceration at ten years for each count. *Cf. Soucy*, 2006 ME 8, ¶¶ 1, 10, 19, 890 A.2d 719 (finding no abuse of discretion where maximum sentence at step two was eight years on Class B unlawful sexual contact counts); *see also Gall v. United States*, 552 U.S. 38, 51-53 (2007) (discussing the "practical considerations" underpinning use of the abuse of discretion standard for review of sentences by appellate courts).

[¶32]  At the third step of the analysis, after considering the purposes and goals of sentencing, 17-A M.R.S. § 1151 (2018), and observing that "[t]he age of the victim is . . . absolutely paramount in this case," the court determined that

the final sentence would be ten years' imprisonment on the first count, and a consecutive sentence of ten years, all suspended, with five years of probation on the second count. We find no abuse of discretion at the third step of the analysis.

2. Excessive or Disproportionate Sentences

[¶33] Article I, section 9 of the Maine Constitution provides that "all penalties and punishments shall be proportioned to the offense." We assess whether a sentence is constitutionally disproportionate using a two-part test. *Stanislaw II*, 2013 ME 43, ¶ 29, 65 A.3d 1242. First, we compare "the gravity of the offense with the severity of the sentence." *Id.* (alteration omitted) (quotation marks omitted). If that comparison leads to "an inference of gross disproportionality we then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction." *Id.* (alteration omitted) (quotation marks omitted). Only in rare cases will the threshold comparison lead to an inference of gross disproportionality. *See State v. Ward*, 2011 ME 74, ¶ 20 n.5, 21 A.3d 1033 (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)).

[¶34] As to the gravity of the offense, Hansen had unlawful, inappropriate, and repeated sexual contact with an extremely young child,

16

resulting in two convictions for Class B unlawful sexual contact. The court found that in committing those crimes he violated the trust of not only the victim but also the victim's family, who had permitted him to act as a babysitter and supervise her.

[¶35] We previously found an inference of gross disproportionality in *Stanislaw II*, 2013 ME 43, ¶ 33, 65 A.3d 1242. There, the defendant received three consecutive sentences of eight years' imprisonment with no time suspended, resulting in an unsuspended term of twenty-four years on three counts of Class B unlawful sexual contact. *Id.* Although we found an inference of gross disproportionality, we found "no error in the court's determination concerning the maximum sentence for each crime, nor in its determination that the sentences . . . should be imposed consecutively." *Id.* However, we did take issue with the sentencing court's "fail[ure] to suspend any portion of the three eight-year sentences imposed for the Class B convictions."[3] *Id.*

[¶36] Here, although the court imposed two consecutive ten-year sentences, the court suspended the entire ten-year term of imprisonment on

---

[3]  In remanding that case for resentencing, we observed that "an unsuspended sentence of one-third to one-half of the current unsuspended sentence would comply with our constitutional and statutory proportionality requirements." *State v. Stanislaw*, 2013 ME 43, ¶ 50, 65 A.3d 1242 (*Stanislaw II*). Applying that calculation to the Class B counts in *Stanislaw II* would yield an unsuspended term of eight to twelve years; Hansen's sentence falls neatly in the middle of this range.

the second count. And despite Hansen's efforts to analogize this case to *Stanislaw II*, the unsuspended term there was nearly two and a half times longer than the unsuspended term here. Moreover, the victim in this case is significantly younger than the victims in *Stanislaw*, who ranged in age from ten to fourteen years. *Id.* ¶ 2. We cannot find fault with the sentencing court's determination that the victim's age is "absolutely paramount in this case." *See* 17-A M.R.S. § 1151(8)(A).

[¶37] Comparing the gravity of the offenses committed with the severity of the sentences imposed, we conclude that no inference of gross disproportionality is warranted. *See Stanislaw II*, 2013 ME 43, ¶ 29, 65 A.3d 1242. Therefore, we do not proceed to step two of the disproportionality analysis. *Id.* The sentences are tailored to serve the purposes of sentencing, 17-A M.R.S. § 1151, and are not constitutionally disproportionate, Me. Const. art. I, § 9; *cf. Stanislaw II*, 2013 ME 43, ¶¶ 33, 49-50, 65 A.3d 1242.

[¶38] Having determined that the sentences are not excessive or disproportionate, we finally consider whether the court abused its discretion in imposing consecutive sentences.

### 3. Consecutive Sentences

[¶39] When sentencing a defendant for multiple offenses, "the sentencing court must determine whether to impose consecutive or concurrent sentences." *Stanislaw II*, 2013 ME 43, ¶ 16, 65 A.3d 1242. Although the analysis begins with "the assumption that multiple sentences will run concurrently," *State v. Commeau*, 2004 ME 78, ¶ 16, 852 A.2d 70, a court may impose consecutive sentences if it determines "[t]hat the convictions are for offenses based on different conduct or arising from different criminal episodes," s*ee* 17-A M.R.S. § 1256(2)(A) (2018). "If the court decides to impose consecutive sentences for various convictions, it shall state its reasons for doing so on the record or in the sentences," 17-A M.R.S. § 1256(4), and "it must perform a separate *Hewey* analysis for each conviction," *Stanislaw II*, 2013 ME 43, ¶ 16, 65 A.3d 1242. We review the imposition of consecutive sentences for abuse of discretion. *Id.* ¶ 17.

[¶40] The trial court's findings are sufficient to support a determination "[t]hat the convictions are for offenses based on different conduct or arising from different criminal episodes." 17-A M.R.S. § 1256(2)(A); *see also State v. Powers*, 489 A.2d 4, 6 (Me. 1985) ("Absent a showing to the contrary, a trial judge is presumed to know the law and to have applied it correctly in any given

case."). In its analysis, the court repeatedly referred to Hansen's conduct as having occurred at two different times when the victim was five and six years old, although the incidents involved similar criminal conduct against the same victim. We are satisfied that the court's independent analysis and articulation of the facts of each occurrence provided sufficient justification for the imposition of consecutive sentences. *See State v. Downs*, 2009 ME 3, ¶ 14, 962 A.2d 950. The court did not abuse its discretion in imposing consecutive sentences. *See Stanislaw II*, 2013 ME 43, ¶¶ 23, 33, 49, 65 A.3d 1242.

The entry is:

Judgment affirmed.

---

James P. Howaniec, Esq. (orally), Lewiston, for appellant Gabriel J. Hansen

Andrew S. Robinson, District Attorney, and Lisa R. Bogue, Asst. Atty. Gen. (orally), Augusta, for appellee State of Maine

Androscoggin County Unified Criminal Docket docket number CR-2018-2131
FOR CLERK REFERENCE ONLY