MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2026 ME 25
Docket:         Ken-25-154
Submitted
  On Briefs:    December 30, 2025
Decided:        March 10, 2026

Panel:          MEAD, CONNORS, and DOUGLAS, JJ., and HORTON, A.R.J.

## STATE OF MAINE

### v.

## SEAN EORI

CONNORS, J.

[¶1] Sean Eori appeals from a judgment of conviction for unlawful sexual contact (Class D), 17-A M.R.S. § 255-A(1)(F-2) (2025), and two counts of possession of sexually explicit material (Class D), 17-A M.R.S § 284(1)(A) (2025), entered by the trial court (Kennebec County, *Daniel Mitchell, J.*) following a jury trial. Eori contends that the trial court erred in issuing a protective order and admitting in evidence photographic images of the victim and that the evidence was insufficient to support his conviction. Eori's challenge to the sufficiency of the evidence requires us to address the meaning of "sexually explicit conduct" as that term is used in 17-A M.R.S. § 284.

[¶2] We affirm.

## I. BACKGROUND

### A.  Pre-Trial Procedural History

[¶3]  In September 2023, Sean Eori was arrested and charged by indictment with gross sexual assault (Class A), 17-A M.R.S. § 253(1)(B) (2025); unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(F); unlawful sexual contact (Class C), 17-A M.R.S. § 255-A(1)(E); two counts of sexual abuse of a minor (Class C), 17-A M.R.S. § 254(1)(A-2) (2025); unlawful sexual contact (Class D), 17-A M.R.S. § 255-A(1)(F-2); sexual exploitation of a minor (Class B), 17-A M.R.S § 282(1)(A) (2025); and four counts of possession of sexually explicit material, namely four images of the victim (Class D), 17-A M.R.S § 284(1)(A).  The indictment alleged that these offenses occurred between January 2019 and June 2022, when the victim was twelve to fifteen years old. Eori was arraigned in November 2023 and pled not guilty.

#### 1.  The Protective Order Regarding the Child Advocacy Center Interview

[¶4]  On October 19, 2023, the State filed a motion for a protective order regarding the audiovisual recording of an interview with the victim by a forensic site interviewer at the Child Advocacy Center (CAC).  The State argued that if the recording was "disseminated beyond the defense counsel's file," there was an increased risk that "the child [would] be further victimized" and

that "materials may be used by the Defendant as tools for some type of improper conduct or potential witness tampering."  The State requested that the court issue a protective order "prohibiting additional copying" of the materials, "limiting dissemination to the defense attorney's files kept at the defense attorney's offices," and providing that the materials "may be examined by the Defendant under the supervision of defense counsel at defense counsel's office" prior to the State's turning the materials over to the defense.

[¶5]  Eori opposed the motion, arguing that there was "nothing unique or special" about a CAC interview, and that the order would pose an unnecessary expense and burden upon him.

[¶6]  After a hearing, on January 3, 2024 the court (*Davis, J.*) granted the motion with the terms requested by the State.  Eori filed a Motion For Reconsideration And/Or Clarification, which the court denied on April 24, 2024.

## 2.  Motion in Limine

[¶7]  In September 2024, Eori filed a motion in limine requesting that the State be prohibited from introducing the images pertinent to the possession charges in Counts 8 through 11.[1]  He argued that the images were not relevant

---

[1]  Counts 8 through 11 charged Eori with possession of sexually explicit material (Class D).  The following images were the subject of those counts and his motion:

4

because they depicted "mere nudity" and did not constitute "lewd exhibition" as is required for a conviction under the relevant statutory provisions. He further referenced M.R. Evid. 403 and 404. Eori requested, alternatively, that if the images were deemed admissible, the court bifurcate the trial as to these counts.

[¶8] The State responded that whether the images met the statutory requirements was a question for the fact finder and not suitable for pretrial determination and that the images were relevant to all of the charges, so the counts should not be bifurcated.

[¶9] The court (*Daniel Mitchell, J.*) denied Eori's motion on September 24, 2024.

---

State's Ex. 5 [Count 11]: A nude photograph that the victim took of herself in the mirror with her hair covering her nipples, but the rest of her body exposed down to her mid-upper thigh.

State's Ex. 9 [Count 8]: A photograph of the victim from her lower abdominal area down to her feet in which she is wearing only red socks.

State's Ex. 11 [Count 9]: A nude photograph that the victim took of herself in the mirror with her breasts and entire front side exposed down to her mid-upper thigh. In the photograph she is touching one of her breasts in the nipple area.

State's Ex. 12 [Count 10]: A photograph of the victim's back side from just above the buttocks down to her feet. The photograph depicts bruises just above the victim's buttocks and she is wearing red socks but seemingly no other clothing.

## B.    The Facts as Proved at Trial

[¶10]  Viewed in the light most favorable to its verdict, the jury rationally could have found the following facts beyond a reasonable doubt.  *State v. Hansen*, 2020 ME 43, ¶ 2, 228 A.3d 1082.

[¶11]  Eori was a friend of the victim's father and had known the victim since she was a young child, but Eori and the victim began communicating frequently, via text message and Instagram messaging, after the two were together (with others) on a boat trip on July 4, 2020, at which time the victim was thirteen years old.  Their conversations touched on a variety of topics, which included the victim's sex and dating life.  Eori and the victim spent a significant amount of time together—the victim testified that they saw one another "on approximately a weekly basis."

[¶12]  The victim testified that Eori would give her socks and she would send him pictures of her wearing them.[2]  She would also send him pictures of herself naked.  Although the victim testified that Eori asked for these pictures, Eori testified that he was "shocked" to receive those images.  He stated that he initially screenshotted some of the photographs the victim sent him on

---

[2] The victim testified that socks were a large part of her relationship with Eori and that Eori would collect her dirty socks, use them to masturbate, and then return them to her.

Instagram, intending to show the victim's parents. He then testified, however, that he instead deleted those photographs "right away."

[¶13] In June 2022, the victim told her parents about her alleged relationship with Eori, and her mother reported the relationship to law enforcement. Law enforcement obtained a warrant and seized Eori's phone. An analyst with the Maine State Police Computer Crimes Unit conducted a search of the phone and "located approximately nine images that [were] consistent with" the victim.[3]

[¶14] Four of the images were the subjects of the four charges of possession of sexually explicit material and Eori's motion in limine. At trial, after the analyst testified about the images, the State moved collectively for the admission of all nine photographs, marked as State's Exhibits 4 through 12. Defense counsel objected, stating that he wished to "preserve [his] issue," referencing his earlier "motion to suppress" and "whether they met the standard of sexually explicit." He then alluded to foundation and stated that he "would again, object to the admission of these photos." The court said that it understood the objection because it was familiar with the order on the motion

---

[3] At trial, the analyst from the Maine State Police Computer Crimes Unit who completed the computer forensic analysis for this case testified that he was able to recover the images of the victim on Eori's phone despite Eori's deleting them because they were stored as thumbnails.

in limine, and overruled the objection, finding that a proper foundation had been laid and stating that it would rule the same way as to it being the jury's role to make the determination as to whether "they" are sexually explicit photos.

[¶15] After the State's case-in-chief, Eori moved for judgment of acquittal on all counts. He specifically argued that the four photographs identified in the possession charges in Counts 8 through 11 did not depict "sexually explicit conduct" as is required by the statute. The court denied the motion, stating that "the actions of the individual shown in the photographs could reasonably be – be found by a jury to be designed for the purpose of eliciting or attempting to elicit a sexual response in the intended viewer."

[¶16] After Eori presented his defense, he renewed his motion for judgment of acquittal. The court dismissed Count 10, which was based on State's Exhibit 12, but denied the remainder of Eori's motion.

[¶17] The jury found Eori guilty of unlawful sexual contact (Class D) and two counts (Counts 8 and 9) of possession of sexually explicit material (Class D) based on his possession of State's Exhibits 9 and 11. The jury found him not guilty on the remaining counts. A sentencing hearing was held on

8

March 25, 2025, and Eori was sentenced to 180 days in the Kennebec County Jail. The sentence was stayed pending appeal.

[¶18] Eori now appeals from the judgment of conviction, challenging the issuance of the protective order, the admission of State's Exhibits 4 through 12, and the denial of his motion for judgment of acquittal.

## II. DISCUSSION

**A.   The court did not err in issuing the protective order.**

[¶19] We review a trial court's discovery order for abuse of discretion. *Pinkham v. Dep't of Transp.*, 2016 ME 74, ¶ 17, 139 A.3d 904.

[¶20] Rule 16(b)(6) of the Maine Rules of Unified Criminal Procedure provides that "[u]pon motion of the attorney for the State, and for good cause shown, the court may make any order that justice requires." Contrary to Eori's position that there is nothing "special" about CAC interviews, 22 M.R.S. § 4019 (2025), a provision within the "Child and Family Services and Child Protection Act," 22 M.R.S. §§ 4001 to 4099-P (2025),[4] strictly restricts the dissemination of CAC interviews. Section 4019(9-A)(E) provides that "[i]nformation may be disclosed"

> [i]n a criminal matter, to a defendant pursuant to the Maine Rules of Unified Criminal Procedure, Rule 16(b)(6). Before releasing the

---

[4] Title 22 M.R.S. § 4019 was amended and subsection 9-A was added on June 16, 2023, effective October 25, 2023. *See* P.L. 2023, ch. 193 § 5 (codified at 22 M.R.S. § 4019(9-A)).

recording, the prosecutor *shall* request that the court issue a protective order of confidentiality ordering who is allowed to view the recording and how and where viewing will occur. In making its determination, the court shall weigh whether the defendant is represented by counsel and whether restricting viewing of the recording will be unduly prejudicial to the defendant.

(Emphasis added.)

[¶21] Thus, under the statute, the State in criminal cases is *always* required to seek an order protecting CAC interviews from dissemination, superseding Rule 16(b)(6) to the extent that the rule would otherwise require the State to show good cause in seeking a protective order relating to CAC materials. Under the plain language of section 4019(9-A)(E), in reviewing the State's request, the court focuses on whether the defendant has counsel and whether restricting the viewing would be unduly prejudicial to the defendant. Here, Eori had counsel. His only argument as to prejudice was that he worked full time, which he said made review at his counsel's office burdensome. Given the language of the statute and its purpose, the sensitive nature of CAC interviews, and the risk of further victimization of the child, it was well within the court's discretion to limit review by Eori to when he is under the supervision of defense counsel, with the materials to be kept at all times in defense counsel's files at his office.

**B.** **The trial court did not err in admitting the State's Exhibits 4 through 12.**

[¶22] The images that Eori claims should not have been admitted fall into two categories. The first category consists of the four exhibits that were the subjects of the four counts of possession of sexually explicit materials. Because these images formed the bases of the charges, they were obviously relevant and, indeed, necessary for the fact finder to properly consider the charges. To the extent that Eori is arguing that they did not constitute sexually explicit materials, that argument is addressed *infra* at paragraphs 27-39. Eori has not challenged the court's decision not to bifurcate the trial. Hence, to the extent that Eori is arguing on appeal that these four images should not have been admitted because they are irrelevant or unfairly prejudicial, his argument is devoid of merit.

[¶23] His argument as to the remainder of the images requires more discussion. As a threshold matter, Eori's objection is not preserved. At trial, defense counsel objected to the admission of the photographs in toto, but his arguments were made (1) to preserve his motion in limine, which related to only four of those photos, and (2) to assert that a proper foundation had not been laid. He does not pursue the latter argument on appeal. These were the only arguments asserted before the trial court. "The overruling of a specific

objection preserves nothing for review unless the evidence was inadmissible for the reason stated; if the reason stated was invalid, there is no error in admitting the evidence even though the objection would have been valid if made on some other ground." *State v. Betts*, 491 A.2d 1169, 1170 n.1 (Me. 1985) (quotation marks omitted).

[¶24] On appeal, Eori also does not distinguish between the images that were the subjects of the charges and those that were not. Instead, his argument appears focused on asserting that the images that were the subjects of the charges were not sexually explicit materials within the meaning of the statute. Any argument that the five photographs that were not the subjects of the charges should not have been admitted because they were, for instance, irrelevant or unfairly prejudicial has not been developed and, therefore, has been waived. *See State v. Smith*, 2024 ME 56, ¶ 29 n.8, 320 A.3d 405.

[¶25] Even if we reviewed the admissibility of the five photographs as if an objection had been properly preserved claiming that they were irrelevant or unfairly prejudicial, all the photographs were properly admitted. Several of these were images of the victim either nude or in various degrees of undress. Exhibits 6, 8, and 9 specifically depict the victim's sock-clad feet, and in Exhibits 8 and 9 she seems to be wearing nothing but socks, and, as noted *supra* in

footnote 2, the victim's socks were a relevant aspect of the State's case. Exhibits 7, 10, and 12 show a bruise that the victim explained she obtained from falling into a counter at Eori's home after he shoved her. All are relevant in showing the relationship between the victim and Eori. *See State v. Cardona*, 2025 ME 97, ¶ 27, 347 A.3d 1032.

[¶26] "[A]ll relevant evidence should be admitted unless any prejudice overwhelms any potentially probative value." *State v. Bickart*, 2009 ME 7, ¶ 39, 963 A.2d 183. Given the nature of the charges brought against Eori and the relevance of the photographs to those charges, all the images were properly admitted at trial.

## C. The jury could and did rationally find Eori guilty of possession of sexually explicit materials, Exhibits 9 and 11.

[¶27] We view "the evidence in the light most favorable to the State to determine whether a jury could rationally have found each element of the crime proven beyond a reasonable doubt." *State v. Waterman*, 2010 ME 45, ¶ 29, 995 A.2d 243.

[¶28] Section 284(1)(A) provides in relevant part that a person is guilty of possession of sexually explicit material if that person "[i]ntentionally or knowingly . . . possesses or accesses with intent to view any . . . image or material that the person knows or should know depicts another person engaging in

sexually explicit conduct" and the person depicted is less than sixteen years old. Section 281(4)(E) defines "sexually explicit conduct" as "[l]ewd exhibition of the genitals, anus or pubic area of a person. An exhibition is considered lewd if the exhibition is designed for the purpose of eliciting or attempting to elicit a sexual response in the intended viewer."

[¶29] Eori argues that the trial court erred in denying his motion for judgment of acquittal on the counts charging possession of sexually explicit materials of which he was found guilty (Counts 8 and 9) because the images supporting those counts (State's Exhibits 9 and 11, respectively) did not depict the victim's genitals, anus, or pubic area. He asserts that even if a fact finder could find that the images did depict those areas, the State has failed to demonstrate that they were "lewd" or "designed for the purpose of eliciting or attempting to elicit a sexual response." *Id*.

[¶30] Exhibit 9, the subject of Count 8, depicts the front of the victim's body from the abdomen down. She is naked apart from socks on her feet. Exhibit 11, the subject of Count 9, is a photograph that the victim took of herself naked, in the mirror. It depicts the front of her nude body from the upper thigh up. In the photograph she has her hand on one of her breasts, touching her nipple area.

14

[¶31] We reject Eori's first argument because a jury could reasonably determine that these photographs depict the victim's pubic area. *See, e.g., United States v. Ward*, 686 F.3d 879, 882-84 (8th Cir. 2012) (holding that a jury could reasonably find that a video in which the defendant recorded a minor undressing, getting into and out of a shower, drying, and dressing, repeatedly capturing the front of her naked body, depicted the child's genitals or pubic area).

[¶32] Whether or not these photographs depict a "lewd exhibition" requires further discussion. When determining whether a depiction is "lewd" or "lascivious," many courts have explored the use of the factors derived from *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986).[5] *See, e.g. United States v. Campbell*, 81 F. App'x 532, 536 (6th Cir. 2003) (collecting cases).

---

[5] The *Dost* factors are

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; 4) whether the child is fully or partially clothed, or nude; 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Dost*, 636 F. Supp. at 832. The Ninth Circuit subsequently added two more factors—"whether the picture portrays the child as a sexual object" and "[the] captions on the pictures." *United States v. Arvin*, 900 F.2d 1385, 1390-91 & n.4 (9th Cir. 1990).

The federal law codified at 18 U.S.C.A. §§ 2251 to 2260A (Westlaw through Pub. L. No. 119-59) largely parallels Maine's statute prohibiting sexual exploitation of minors, utilizing the word

[¶33]   Several courts, including the First Circuit, however, have been hesitant to bestow too much weight on consideration of the *Dost* factors. *See United States v. Amirault*, 173 F.3d 28, 32 (1st Cir. 1999) ("We believe that the *Dost* factors are generally relevant and provide some guidance in evaluating whether the display in question is lascivious.  We emphasize, however, that these factors are neither comprehensive nor necessarily applicable in every situation.").  The First Circuit has cautioned that "there is a risk that the *Dost* factors will be used to inappropriately *limit* the scope of the statutory definition" of, in the relevant case, "lascivious."  *United States v. Frabizio*, 459 F.3d 80, 88 (1st Cir. 2006); *see also State v. Whited*, 506 S.W.3d 416, 437 (Tenn. 2016).

[¶34]   We agree with the Maryland Supreme Court that an approach examining the totality of the circumstances makes the most sense.  *See Turenne v. State*, 321 A.3d 697, 722 (Md. 2024).   This approach allows for the consideration of the *Dost* factors amongst many other factors that may be relevant.  *Id.*

---

"lascivious" instead of "lewd" and omitting the second sentence of Maine's definition (which is treated as the sixth *Dost* factor).  *See id.* § 2256(2).  When discussing the meaning of the term "lewd," we treat "lewd" and "lascivious" as synonyms and thus consider federal case law addressing the parallel provisions.  *See United States v. Wiegand*, 812 F.2d 1239, 1243 (9th Cir. 1987) ("'Lascivious' is no different in meaning than 'lewd[.]'").

[¶35] The use of the word "designed" in the second sentence of the Maine statute and the sixth *Dost* factor raises the question whether the test is an objective one that considers only the four corners of the image or a subjective one that considers the intent of the photographer or the response of the defendant. *Compare United States v. Brown*, 579 F.3d 672, 682-84 (6th Cir. 2009) (considering the subjective intent of the photographer to be relevant in context), *with Amirault*, 173 F.3d at 34 ("We believe, however, that it is a mistake to look at the actual effect of the photograph on the viewer, rather than upon the intended effect. If Amirault's subjective reaction were relevant, a sexual deviant's quirks could turn a Sears catalog into pornography." (citation omitted)).

[¶36] Again, we adopt a totality of the circumstances approach. *See Turenne*, 321 A.3d at 722 (highlighting that the totality approach invites "consideration of all circumstances surrounding a depiction; not just the image itself, but the actions and preferences of the defendant." (quotation marks omitted)). A fully clothed depiction probably does not fall within the statute's definition, although it may elicit a sexual response in a particular defendant. Conversely, both the subjective response of the defendant and an objective

consideration may be relevant as to photos, such as those here, with nudity except for a specific article of clothing.

[¶37]  We see no need to go beyond limning the test with these general parameters, with the understanding that the language in the statute is plain and understandable to jurors.  *See Frabizio,* 459 F.3d at 85 ("[W]hether the item to be judged is lewd, lascivious, or obscene is a determination that lay persons can and should make. . . . In making this determination, the standard to be applied by the jury is the statutory standard.  The statutory standard needs no adornment." (quotation marks omitted)).[6]

[¶38]  Indeed, the jury here clearly took care in distinguishing between the three photographs submitted for their consideration, acquitting Eori as to Exhibit 5.  The trial court also properly undertook its task as gatekeeper, granting Eori's motion as to Count 10, which was a charge of unlawful possession of Exhibit 12.  The inclusion of the sixth *Dost* factor in the statutory definition eliminates the risk of criminalizing photographs, such as that of

---

[6] Eori did not challenge the jury instructions in this case.  To the extent that the *Dost* factors are deemed of use, they support the jury's verdict: as noted, a jury could reasonably find that the first factor, whether the photo depicts the victim's pubic area or genitalia, was satisfied. *Dost*, 636 F. Supp. at 832.  The fourth factor, which considers whether the victim is nude or clothed, also weighs in favor of a determination that the photographs are lewd.  *See id*.  In addition, in one of the relevant photographs the victim is touching her breast.  This could reasonably be interpreted as objectively suggestive of "sexual coyness" or "a willingness to engage in sexual activity" as per the fifth *Dost* factor. *Id*.

babies frolicking in their baths, taken devoid of any sexual design. *See Whited*, 506 S.W.3d at 431 ("[I]t is generally accepted that mere nudity, without more, is insufficient to establish a lascivious exhibition of private body areas.").

[¶39]  In sum, viewing the totality of the circumstances, the jury reasonably could find Eori guilty as to Counts 8 and 9.

### III.  CONCLUSION

[¶40]  The purpose of section 284 is reflected in the title of chapter 12, Title 17-A: "Sexual Exploitation of Minors."  A similar purpose of avoiding child victimization is reflected in the confidentiality provisions for CAC interviews. The language of these statutes is plain.  The trial court's imposition of a protective order limiting the dissemination of the CAC interview was well within its discretion, as was the admission of all the images here that were extracted from the defendant's phone, and in light of all the circumstances presented, the jury reasonably found that Exhibits 9 and 11 constituted sexually explicit material within the meaning of section 284.

The entry is:

Judgment affirmed

Walter F. McKee, Esq., and Kurt C. Peterson, Esq., McKee Morgan, LLC, P.A., for appellant Sean Eori

Maeghan Maloney, District Attorney. and Amanda Seekins, Asst. Dist. Atty., Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2023-1733
FOR CLERK REFERENCE ONLY